JAMES DAVISON *vs.* JAMES W. DAVISON and others.

It is a well settled rule, that where services are rendered gratuitously or without any view to compensation, but in the hope of receiving a legacy or devise from the person to whom the services are rendered, the person rendering the services can recover no compensation therefor.

A father made a verbal agreement with his youngest son, that if he would remain and work his farm, and support and maintain him during his life, that upon his death the son should have the farm. The son remained and worked the farm, for upwards of fifteen years, to the satisfaction of the father, who then becoming displeased with him, conveyed the farm to his two other sons, in consideration of maintenance for life. *Held*—

1. That as it appeared that the complainant's services were rendered to his father not gratuitously, but upon a distinct understanding between himself and his father that he should be compensated for his services, and that the material part of that agreement was that upon his father's death, provided he continued to serve and provide for him during his life, he should receive the homestead farm, that the agreement thus proved was valid in law.

2. That part performance took the case out of the operation of the statute of frauds.

The bill in this case permitted to be amended after final hearing, so as to make the contract alleged agree with that proved.

*Leupp*, for complainant.

*Speer*, for defendants.

THE CHANCELLOR. The bill charges, that in the year 1849, the defendant, James W. Davison, being seized and possessed of his homestead farm of one hundred acres,

of the value of $6000, and money at interest, amounting to less than $1000, agreed with the complainant, who is the youngest son of the said defendant, to assure to the complainant the said farm and money, upon the undertaking of the complainant to afford his father and mother a comfortable maintenance for their lives and the life of the survivor of them, and to make advances to his four daughters, *viz:* to the three eldest $700 each, and to the youngest $1200; that by the terms of the agreement the proceeds of the farm, as well as the principal of the money at interest, was to belong to the complainant; that relying upon the faithful performance of the agreement by his father, the complainant entered into the contract, and immediately entered upon the performance thereof.

That he has faithfully performed the said agreement on his part by the cultivation and improvement of the farm, by the payment of the said portions to his sisters, by making permanent and valuable improvements upon the farm, and by affording a comfortable maintenance to his parents till the death of his mother, and to his father since her decease, as long as he was permitted to do so, and that by reason thereof he became justly and legally entitled to the farm upon the death of his father, he continuing, as he is able and willing to do, to afford a comfortable maintenance to his father during the residue of his life.

The bill prays that the contract may be established and performed on the part of James W. Davison; that the deed made by the said James W. Davison to his sons, Reuben and Joseph, may be vacated upon just and equitable terms; or if the contract cannot be enforced, that the defendant may be decreed to account for the services of the complainant, and to pay him what may be found due upon such accounting, and for an injunction to restrain proceedings at law. Upon filing the bill an injunction issued, which was afterwards dissolved upon the coming in of the defendants' answer, which denied the equity of the bill.

The evidence, which is very voluminous, satisfactorily establishes the following facts, which are material to a proper understanding and disposition of the rights of the parties. In the year 1850, the defendant, James W. Davison, was seized and possessed of his homestead farm, in the county of Middlesex, containing about one hundred acres, upon which he resided with his wife and some of his children. His four oldest sons had all received advancements from their father, had left home, and were married and settled. James, the youngest son, who came of age in 1844, was unmarried, and remained upon the farm with his father. He continued with him, having charge of the farm, laboriously engaged in its cultivation and management until August, 1859. During this period advances were made by the father to three of his daughters, who were married and had left home, so that previous to September, 1856, his wife having died, he was left upon the farm with his youngest son, James, the complainant, and his youngest daughter, Ida. All his other children were provided for and settled in life. In the spring of 1857, James having married, a small dwelling house was built for his accommodation upon the homestead farm, the father and daughter continuing to occupy the mansion house. In August, 1859, a painful family difficulty arose between the father and the daughter in law, which led to litigation, and ended in the expulsion of the complainant from the farm. On the twentieth of September, 1859, soon after the difficulty with the complainant, the father conveyed to his two sons, Reuben and Joseph, in fee simple his homestead farm with usual covenants. The consideration of the deed, as therein expressed, is natural love and affection, the sum of $5 paid by each of the grantees, and an engagement on their part to maintain him for the residue of his life. The grantees executed an agreement of even date, in consideration of the conveyance, to maintain their father for the residue of his life, to pay the expenses of his last sick-

ness and his funeral expenses, including a decent head-stone to be placed at the head of his grave. On the day after the date of these remarkable instruments, a notice was served upon the complainant by his father, or in his name, in these words.

"To Mr. James Davison, junior.

Take notice that your service is not wanting on my farm now conveyed away to my two sons Reuben and Joseph Davison and I have give them immediate possession of the same and if you continue thereon I shall hold you as a trespasser, and proceed against you according to law, and further I shall not want any more of your help to gather in my crop at present on said farm."

Refusing to give up possession an ejectment was brought by the brothers. The complainant sought to protect himself by injunction, but the defendants, by their answer, denying all the equity of the bill, the injunction was dissolved, and the complainant was turned out of possession. And thus, after fifteen years' labor from his attaining his majority in his father's service, during nine of which he had the entire control and management of the farm, engaged faithfully and laboriously, and as appears by the evidence, to his father's entire satisfaction, having received no compensation whatever for his services beyond a bare subsistence, he is turned out of his home without a dollar's compensation, and so far as appears without the means of subsistence. And as if to deprive him of the possibility of obtaining redress, the title of the farm is immediately conveyed to two of the complainant's brothers, the goods and chattels converted into money, and thus the entire real and personal estate of the father placed beyond the reach of legal process. The case, in its leading features, is a most extraordinary one. The father, as appears not only by the testimony of numerous witnesses, but from his express recital in the deed to his sons, Reuben and Joseph, was in old age, infirm, and unable to take care of himself. He needed the services

and assistance of his children. He had long since made advancements to all his children except his youngest son and daughter, who remained at home with him attending to his affairs and ministering to his comfort. By his will, executed in September, 1856, he declared that he had given all his sons except the complainant their portions in his personal and real estate, and had made advancements to his elder daughters, and therefore gave the whole of his real and personal estate to his two youngest children, who were at home with him, the farm being devised to the complainant. And yet within three years thereafter, without any failure of service on the part of the complainant, he is turned out of possession without remuneration for his services, and the entire real estate of the father transferred to his brothers. Whether this change of purpose was produced by the painful difficulty between the father and the wife of the complainant or by the contrivance of the sons who have obtained possession of the property, or by the efforts of the complainant to defend his wife's character, is not material for the purpose of this inquiry. That it is a case of peculiar and extreme hardship upon the complainant cannot be questioned. But does he stand in a situation which entitles him to relief in this court? It is insisted, on the part of the defendants, that the services of the complainant were rendered to his father gratuitously, and upon the mere hope of having some provision made for him by his father's will. If so he is clearly entitled to no relief. The rule is well settled, that where services are rendered gratuitously or without any view to compensation, but in the hope of receiving a legacy or devise from the person to whom the services are rendered, the person rendering the services can recover no compensation. *Osborn* v. *Governors of Guy's Hospital*, 2 *Strange* 728; *Le Sage* v. *Coussmaker*, 1 *Esp.* 187; *Little* v. *Dawson*, 4 *Dal.* 111.

The complainant claims, and I think the evidence satisfactorily proves, that these services by him were not ren-

dered gratuitously, but upon the distinct understanding between the father and son that the son should receive the farm upon the father's death. It is expressly proved by two witnesses (in addition to the testimony of the complainant himself) that the father declared that he had agreed with James that he should have the farm upon his death. It is proved, moreover, that the father declared, speaking of the security of the provision made for his son, that the will could not be broken, that a will was as good as a deed, and that the reason that he did not make a deed was that he had been advised by a friend not to put all his property out of his hands in his lifetime. This evidence derives strong confirmation from the fact that the father was in a situation to need the services of the son, that all his other sons had been advanced and had received all the provision which he designed to make either from his real or personal estate, that he had in fact devised the farm to the complainant; that that will was in existence at the commencement of this difficulty, and as appears by the evidence, has been destroyed during the progress of the suit, although the father, by his answer, utterly denied that any such will had ever been made, and lastly from the fact, that as soon as the friendly intercourse between the complainant and his father was broken off the father deeded the farm to his sons, Reuben and Joseph, upon almost the identical contract which the complainant alleges his father some years previously had made with him. If the fact that the services of the complainant were not performed gratuitously needs further proof it will be found in the fact, clearly proved by the defendant's own witnesses, that he was offered by his father $2000 to abandon an action for slander and in satisfaction of his interest in the farm. If he had no contract with his father and no claim for his services it is difficult to understand why so large a sum should be offered in satisfaction of his claim.

I entertain no doubt, from the evidence, that the com-

plainant's services were rendered to his father not gratuit-
ously but upon a distinct understanding between himself
and his father that he should be compensated for his ser-
vices, and that the material part of that agreement was
that upon his father's death, provided he continued to
serve and provide for him during life, he should receive
the homestead farm.

The agreement thus proved is valid in law; *Jacobson* v.
*Ex'rs of Legrange,* 3 *J. R.* 199; *Paterson* v. *Paterson,* 13
*J. R.* 379; *Chitty on Con. (9th ed.)* 557, and cases cited in
*note* 1, and may be enforced in equity; *Gary* v. *Ex'rs of
James,* 4 *Dess.* 185; *Johnson* v. *Hubbell,* 2 *Stockton* 332.

That the contract was by parol and not in writing,
while it greatly increases the difficulty of proving its
terms, constitutes no valid objection to its enforcement.
There has been a part performance on the part of the
complainant. He served his father several years upon
the faith of the contract, and as the evidence shows faith-
fully and to his father's satisfaction. Part performance
takes the case out of the operation of the statute of
frauds.

The contract is not proved precisely as laid in the com-
plainant's bill. The complainant charges that by the
agreement he was to receive not only the real estate, but
also the personal estate of his father upon making certain
advances to his daughters. The evidence, so far as the
personal estate is concerned, does not prove this contract.
The bill must be amended so as to conform to the con-
tract as proved. It may be done at this stage of the cause
after hearing on bill, answer, and evidence. *Bellows* v.
*Stone,* 14 *New Hamp.* 175. No embarrassment can result
from it. It is not a case where the defendant sets up and
proves a different contract from that relied on by the com-
plainant. There the defendant is entitled to a decree for
the performance of the contract as *he* proves it. *Story's
Eq. Pl.* § 394.

Here the defendant has utterly denied the existence of

any contract. The contract, as proved, is variant from that charged in the bill. Before decree there must be an amendment. *Story's Eq. Pl.* § 394, *note* 2.

Upon the bill being amended the court will decree that the contract, as proved, be established; that the complainant, upon the performance of the agreement on his part, or upon his readiness to perform if prevented by the acts of the defendants, will be entitled to the farm upon the death of the father; that the deed executed by the father to his sons, Reuben and Joseph, be set aside as fraudulent and void as against the complainant, and that the defendants, and each of them, be restrained from aliening, charging, or encumbering the said farm.

It is eminently desirable that this controversy should be amicably adjusted, and the court repeats the hope expressed on the argument, that a settlement may be effected between the parties without further action on the part of the court. The father is entitled to the enjoyment of the farm during his life. No present decree for the specific performance of the contract can be made. The complainant is entitled to the farm only upon the death of his father. By the terms of the contract, is to have the management of the farm and to provide for his father during his life. If the father refuses to accept the services of the complainant, and no amicable adjustment can be made, further directions will be given for the management of the farm and the support of the father during his life.