Ackerman *v.* Ackerman's Executors.

---

ACKERMAN *vs.* ACKERMAN'S EXECUTORS and others.

1. A verbal agreement between a father and son, that the son should cultivate the farm upon which he lived with his father, provide all the buildings and improvements required, and keep all the buildings and improvements in repair, all at his own cost and expense; should pay all taxes upon said farm, and pay to his father the sum of $100 in cash, in each year as long as he lived; and that in consideration thereof, upon the decease of the father, the said farm should belong to the son; even if fully performed on the part of the son, must be sufficiently and satisfactorily proved, to entitle him to a decree for specific performance.

2. Some improvements having been made by the son upon the farm, not such as an ordinary tenant would be likely to make, and the defendants, though denying that the alleged verbal agreement was ever made, tendering themselves ready and willing to contribute their proper share for a compensation for such improvements, a decree was advised, referring it to a master to ascertain and report what allowance would fully meet, in this respect, the conceded equity of the case, and that such allowance be made.

---

Argued on bill, answers, replications, and proofs.

*Mr. C. H. Voorhis,* for complainant.

*Mr. M. M. Knapp* and *Mr. L. Zabriskie,* for defendants.

---

---

THE VICE-CHANCELLOR.

The complainant, Gilbert B. Ackerman, brings this suit against the executors and the devisees in the will of his father, Peter H. Ackerman, deceased, to compel a conveyance to himself of a farm of about seventy-four acres, situate in Saddle river, in the county of Bergen. His father died on the 2d of June, 1869, at the age of seventy years, leaving a last will and testament which has been duly proved in the surrogate's office of said county. The testator was possessed of a considerable estate, personal and real, though the precise value of it does not certainly appear in the cause. After a bequest of $10,000 and his household furniture to his wife, he directs all his real estate in Saddle river to be sold and the proceeds thereof, together with the residue of his personal property, after the legacy to his wife, to be divided into five equal shares; one share to go to his son, the complainant; one share to each of his daughters; and one share to be divided equally among his grandchildren, the children of his deceased son, John Henry Ackerman. Isaac N. Voorhis and Cornelius Cadmus, the sons-in-law of the testator, are appointed the executors of his will.

The complainant receives an equal share with the other children of his father, but is dissatisfied with this equality, and charges that the will is a fraud upon his rights. He alleges that he worked upon the farm in question—being his father's homestead—till he became of age, in 1855, when he married and continued to live there and work with and for his father till the spring of 1857, when he made an arrangement with his father under a verbal agreement, which is set out as follows: "It was understood and agreed between them that your orator should cultivate the said farm and a five acre lot at his own cost and expense and for his own benefit, and should at his own cost and expense provide all the buildings and improvements he required; should keep all the buildings and improvements in repair at his own cost and expense; should pay all the taxes levied and to be levied against said farm; and should pay to his said father the sum

of $100 in cash, in each year, as long as he lived, and should allow his father one half of the chickens, and take care of them, and should find him the feed for one horse for what use your orator had of the horse ; and in consideration thereof, that upon the decease of his said father, the said farm and five acre lot should belong to your orator."

The agreement thus alleged was afterwards, as complainant says, modified by omitting from its operation the five acre lot. He further says that he took possession of the farm under this agreement, and cultivated the same, repaired the fences and buildings, erected such additional buildings and fences as were needed, and had the whole house painted, including the part occupied by his father, firmly believing that his father would carry out said arrangement by devising said farm to him upon his decease. He alleges that he has fully performed the agreement on his part, and prays that the devisees and executors may be ordered to convey the farm to him in pursuance of the agreement on the part of his father.

There are several aspects of this case which, in my judgment, are unfavorable to the claim set up by the complainant, and which, if not decisive against it on strictly technical grounds, do not commend it to the exercise of that discretion on which alleged contracts of this nature depend, in a court of equity for compulsory specific performance. But I shall not advert to these aspects, or to any point presented by the pleadings and proofs, except the single and primary point, that the alleged contract, in pursuance of which the farm was to belong to the complainant, has not been sufficiently or satisfactorily proved. I am of opinion that the agreement or understanding set out in the bill was not, in fact, made by the father and the complainant. It may be true that the expectation existed on the part of the son, that the farm would be his, and that such a result was contemplated by the father as not unlikely, or as altogether probable in the final division of his estate ; but no definite, positive and binding contract, even of a verbal description, was entered into which can now be enforced. The yearly value of the premises,

which the complainant had possession of, was largely in excess of what he was to pay ; his payments, in fact, being inadequate as rent, and the advantages of the arrangement in respect to such possession, being manifestly on the side of the son. The improvements of a permanent nature, put up by the complainant, are not of such value or extent as to furnish any strong argument in support of the view that he relied, as he claims, on the validity of the contract that the land should ultimately be his. But inasmuch as some improvements were made, not such as an ordinary tenant would be likely to erect, and the defendants in their answer, while denying that the verbal agreement was ever made as alleged, and asserting its invalidity if made, still tender themselves ready and willing to contribute their proper share for a compensation for said improvements, I am willing to advise a decree that it be referred to a master, to ascertain and report what the fair allowance is, that would meet, in this respect, the conceded equity of the case, and that such allowance be accordingly made. To decree more than this would, I am satisfied, be inequitable and wrong. I am entirely unable to perceive any grounds on which the complainant can be held to have suffered injustice at the hands of his father, or to have established the charge that the large and equal provision, made for himself in the will of which he complains, was in violation of good faith, and a fraud on his rights.

I shall advise as above.