Riley *v.* Allen.

## KATE M. RILEY

*v.*

## CHARLES E. ALLEN, executor &c. of Joseph K. Riley, deceased, et al.

A man promised his daughter-in-law that if she would convey to him a certain tract of land he would, by his will, give to her and her husband each the interest of $25,000 during their several lives. On the strength of that promise the daughter-in-law and her husband conveyed to him the land in question. He died testate of a will by which he failed to fulfill his promise, but disposed of his property otherwise for the benefit of the infant children of his son and daughter-in-law. The daughter-in-law filed a bill against her children, praying that the conveyance from her to her father-in-law might be set aside, and for other relief.—*Held,* that her proper remedy was either, first, by action at law against her father-in-law's estate for damages for the breach of his contract, or second, by bill in equity praying for the specific performance of the contract to establish the two funds, and that the land conveyed might stand as security for the sums, and that she could only have the alternative relief of rescission and reconveyance at the option of the defendants, if they were adults, or by the consent of the court as guardian of the infants. As it appeared in this case that it was not to the interest of the children to have the funds established but to give the relief sought for, it was so decreed.

Final hearing on pleadings and proofs taken before a master.

*Mr. Howard Carrow,* for the complainant.

*Mr. Enoch S. Fogg,* for the defendants.

PITNEY, V. C.

This is a suit for the rescission of a contract (in the shape of a promise) to make a certain provision for the complainant by will. The contract is alleged to have been made by Joseph K. Riley, since deceased, who is represented here by the defendant Allen, his executor. The real defendants are the ten children of the complainant and one nephew, who are the beneficiaries under the will of the testator. The nephew, however, is affected remotely, if at all.

Riley *v.* Allen.

The allegations of the bill are that at and before April 20th, 1885, the complainant, who was then, and still is, the wife of one Edward B. Riley, son of Joseph K., deceased, was seized of two parcels of land situate in or near the borough of Woodstown, Salem county, of the value of about $25,000; that on the 20th of April, Joseph K. Riley, who was a man of large wealth, entered into an agreement with the complainant to the effect that in consideration that she, with her husband, would convey to him all their right, title and interest in the lands just mentioned, he, said Joseph K. Riley, would, in and by his last will and testament, at his death, give and bequeath unto the complainant and her said husband the use, interest and profits of $50,000, namely, $25,000 to each, for and during the terms of their natural lives, and that in pursuance of that agreement she, with her husband, conveyed the premises to Mr. Riley; that the title so remained in him and he had the benefit of the ownership thereof until he died, which was January 2d, 1894, a period of a little less than nine years; that at his decease the complainant had ten children, who were all made defendants, the oldest of whom at that time was eighteen years of age, and the youngest less than a year.

The bill further states that the testator failed to keep his agreement but by his will gave neither the complainant nor her husband anything, but provided (after some trifling bequests not worth setting out here) that $6,000 of his estate should go to his grandson, Joseph K. Riley, Jr., the son of a deceased son, James R. Riley, and the remainder of his estate, both real and personal, he gave to his executor in trust for and during the lifetime of complainant's husband, to apply the income, in his discretion, to the support, maintenance and education of the ten children of the complainant, and to permit the family of his son, Edward B. Riley, which includes, of course, the complainant, to occupy such portion of his real estate as they may desire for a home for him and his family free of rent, upon condition that they keep the premises in good repair, with the privilege of cutting timber for firewood and for repairs and improvements to buildings, with power of sale in the executor, the proceeds of the

sale to become part of his estate, and at the death of Edward B. Riley the property to be divided among the children of complainant.

The prayer of the bill is that the conveyance from the complainant to the testator may be set aside and decreed to be null and void, and that she may have such further and other relief as the nature of the case may require.

The facts of the case as they appeared at the hearing are that Mrs. Sarah. Riley, the wife of Joseph K. Riley, deceased, died seized of the lands in question, in February, 1874, and by her will she gave the use of them to her husband, Joseph K. Riley, during his natural life; she then, after providing for an unmarried daughter, Beulah, by devising to her certain real estate which is not brought in question here, gave all the remainder of her real estate, which includes the premises here in question, to her son, Edward B. Riley; she also gave him a farm of about forty acres, the title to which was in her husband, so that as to that the devise was futile. Out of her personal property which she gave to her husband, she requested that $6,000 should be taken by her husband's executors and put at interest, and the same given to her son, James R. Riley, during his natural life, and at his decease, without issue, that sum to be divided between her two children, Beulah and Edward. It would seem that at this time neither of her sons was married. Afterwards her son James did marry, and died leaving one son, Joseph K. Riley, who was provided for, as above stated, in his grandfather's will.

Edward B. Riley, after marrying, engaged in various pursuits in Woodstown and its neighborhood, without financial success, with the result that debts accumulated against him, and his father came to his relief and loaned him money and paid debts for him. So that, on the 11th of February, 1884, judgment by confession on bond and warrant was entered in favor of the father against the son, in the Salem circuit court, for the amount of $7,128 besides costs, and execution was issued on it and levied on the personal property of the defendant in execution and also upon the land in question.

Joseph K. Riley had previously set about, as he declared, trying to prevent his son from spending the balance of his property, and tried to induce him to make a conveyance of it to him, Joseph K. This the son at that time declined to do, but as a compromise, on the 8th of February, 1884, conveyed through a third party the whole of the premises to his wife, the complainant, for the nominal consideration of $1. The father, three days later, procured from his son the judgment above mentioned, and then paid or settled all his outstanding debts. The situation, however, did not satisfy the father, as he had, or affected to have, fear that through the influence of the son over his wife the property would still be at his disposal. He, therefore, brought further influences to bear on the son and his wife to convey the property to him, the father, and that resulted in the conveyance of April 20th, 1885, now sought to be set aside.

In September, 1885, the father satisfied the judgment of record, and allowed the son to live upon the premises, substantially free of rent, during his lifetime. He was about sixty years of age when he died.

The promises and representations made by the father to the daughter-in-law, which constitute the contract, are proven by several witnesses besides herself and her husband, principally by a Mr. Holmes, a real estate, insurance agent and conveyancer in Woodstown. Mr. Holmes swears that the father applied to him to use his influence with the son to get a deed to him for the farm, and for that purpose to make certain representations as to what he would do. In fact, this gentleman assisted the father in procuring the conveyance in the first place to the wife— that is, the conveyance to the wife was not suggested in the first place by the father, but was the result of a request that he should convey to the father, and was in the nature of a compromise, the son preferring to convey to his wife rather than to the father. The conveyance from the son and wife to Holmes, and by the latter to the wife, was prepared by the father either in person or by his procurement. Mr. Holmes swears that the father told him at the start to tell Edward that if he would make him a deed for the farm, he would will it to him or deed

it back to him again, and he would leave him the interest of $25,000 and his wife the interest of $25,000 ; that he thought that his personal property would amount to about $50,000, and that he (Holmes) made that statement to Edward.   Soon after the title was vested in the wife, negotiations by Mr. Holmes with complainant, at the instance of the father, were continued, and Mr. Holmes swears that the father told him to tell Kate, the complainant, that he would leave his personal property, which would amount to about $50,000, at interest and give each one of them the interest of one-half, and he would see that they got a good title in the farm back again, free of all encumbrance.

Another witness is Mr. Johnson, the father of the complainant, who lived in an adjoining township, and who was sent for by Joseph K. Riley to come and see him and consult about this affair.   He swears that Riley asked him to use his influence with his daughter to procure a conveyance to him (Riley) ; that Riley said that he would give them each the interest of $25,000 a year as long as they lived, and at his death they should have the property back, and that on the strength of that he advised his daughter to make the conveyance.

. In addition to these two witnesses is the evidence of a colored witness, very much to the same effect, who was either present or within hearing in the next room at the time the conveyance was actually signed.

I am compelled by the force of this evidence, without relying upon either that of the complainant or her husband, which fully agrees with it, to the conclusion that the deceased did make these promises to his daughter-in-law, the complainant, on the strength of which she made the conveyance.   He was either mistaken as to the value of his personal property, or he met with losses before his death, for it amounted to only about $23,000 net, and out of that he was in honor, if not in equity, bound to provide for his grandson, Joseph K. Riley, Jr., the $6,000 mentioned in his wife's will.   The result was that his personal property, subjected to the trust of his will, amounted to only $16,000 or $17,000.   He owned besides the land here in question a farm of forty acres in an adjoining township, the value of which is

not fully stated. Whether his pecuniary situation changed materially from the time he stated to Mr. Holmes that his personal property was worth $50,000, or whether he was then mistaken in his estimate of it, or was making false assertions in order to influence his son and daughter-in-law, does not appear. He disposed, in his will, of his real estate and the residue of his personal estate precisely as stated in the bill, giving the beneficial use of it to the children, with incidental benefit to the parents.

The bill, it will be perceived, does not allege the promise to reconvey the land, nor does it seek to enforce such a promise, although it is quite as clearly proven as the promise to set aside $25,000 for the benefit of the complainant and $25,000 for the benefit of her husband. The bill is based upon the failure of the testator to provide the two funds of $25,000 each, and the relief asked is a rescission and a reconveyance, and not an establishment of complainant's right to the legacy of $25,000. If complainant had asked for the establishment of such fund for her benefit, such relief, I think, is practicable and could be granted. The personal property that remains, together with the landed property, is ample for that purpose.

But it does not appear affirmatively, or even inferentially, that taking the whole of the residue of the estate it is sufficient to establish the two funds of $25,000 each, one for the wife and the other for her husband. Now the wife had the right to stipulate for a fund for her husband's benefit. She would have had this right if it had been to a stranger, without benefit to her, but the stipulation in favor of her husband was, in substance, one for her own benefit, or at least might prove so in the ordinary course of events, and she is entitled to treat it as an integral part of the contract. And the only question that remains is whether or not the entire failure of the promisor to make any provision whatever in pursuance of his promise for the benefit of the complainant or her husband, and the apparent inability of his estate to fulfill that promise, entitles her to the particular remedy asked for, namely, a reconveyance of the land conveyed.

I do not infer from the proofs in the cause that the father

Riley v. Allen.

practiced, or intended to practice, any actual fraud upon his daughter-in-law. It is quite possible that at the time he made the promise he was possessed of the $50,000, in personalty and real estate, independent of the lands belonging to his daughter-in-law, and he may have honestly intended at that time to perform his promise. The will of which he died testate, was executed in November, 1893, only two months before he died, and may have been the result of his observation, during the previous eight years, of the character and ability of his son for business. He may have thought that, considering the then state of his pecuniary affairs, the best thing he could do for his son's family was to make the will he did, and it is by no means certain that his judgment in that regard was not accurate.

But, granting that the conduct of the deceased was free from all fraud, and that his judgment as to what was best for his son's family was sound, the question still remains whether or not he had the right, under the representations and promises which he had made to his daughter-in-law, to make the disposition which he did of the property in question. The land which she conveyed to him was her land, never had been his except that he had a life estate in it, both as tenant by the curtesy and as devisee of his wife, but at his death it belonged absolutely to her, and his devisees have no right to retain it against their mother, claiming, as they do, as volunteers, he having failed to pay the consideration which he agreed to pay, lest they shall themselves pay it.

I come to this conclusion with regret, but it seems to me inevitable. The case of *Johnson* v. *Hubbell, 2 Stock. 332,* decided by Chancellor Williamson in 1854, seems to me to lead to that result. The doctrine laid down by the learned chancellor in the latter part of his opinion in that case has never been, and I think cannot be, questioned. There a son had, at the request of his father, conveyed to his sister an interest in real estate which descended to him by his mother, upon the promise of the father to make a certain disposition of his real estate which would benefit both the son and his sister. Instead of doing so the father made a different disposition of his property, which was

injurious to both the son and the daughter, and for which the daughter was not in the least responsible, yet Chancellor Williamson held that it was inequitable for her to hold the title so conveyed to her by her brother. The language of the learned chancellor (at p. 343) is significant:

"There are several objections interposed to this form of relief. It is said no fraud is imputed to any of the parties at the time of making the agreement, and no fraud is alleged to have been committed by Mrs. Hubbell since; that Mrs. Hubbell made no promise which was to be fulfilled on her part, and that she is not responsible for the non-fulfillment of the agreement by her father.

"The fraud of the father was in not making his will and dividing his estate between his children. It does not divest the breach or non-fulfillment of the contract of its fraudulent character because the fraud was not meditated at the time the agreement was made. The fraud [the learned chancellor evidently uses this word here in the sense of inequitable conduct] of the daughter consists in retaining her brother's land without consideration, which is against good conscience. It is to protect the complainant against this fraud that this mode of relief is proper. That Mrs. Hubbell made no agreement or promise with her brother that she would be responsible that the contract should be carried out, does not make it the less unconscionable that she should hold her brother's land, conveyed to her under a family compact made for their mutual benefit, which has failed of execution through default of either of them, but of a third party. She accepted the land under the family arrangement. That arrangement has fallen through. The position of the complainant is of some consideration with the court. * * * Under such circumstances, to permit the sister to enjoy, without any consideration, a part of that inheritance which the complainant derived from his mother is unjust and a court of equity ought to prevent it."

The complainant prays for a rescission of the contract, with the usual prayer for other relief. The rescission of the contract is not the relief to which the complainant is primarily entitled.

The legal aspect of her situation is this : She conveyed property to her father upon his parol promise, at his death, to do a certain thing.  This he failed to do.  Her remedy is either by an action at law to recover damages for the breach of his contract, or in equity for the specific performance of the contract by the establishment of the two funds, and declaring the same to be a lien upon the land she conveyed, or, in other words, the enforcement of her vendor's lien for purchase-money.  Hence, her right to a reconveyance of the lands conveyed does not arise until there is a failure on the part of the present defendants to pay the purchase price.  And it seems to me that if it should appear to the court that it is to the interest of these infants that the two funds of $25,000 each should be established by way of paying the complainant the consideration contracted for by the testator, the court would confine her to that relief.  But it does not so appear. I am of the opinion that it is decidedly to the interest of the infants not to attempt the establishment of the two funds, even if it were practicable to do so, but to give the complainant, as an alternative relief, that which she prays for in her bill, viz., the reconveyance of the premises.

I will advise a decree accordingly, with costs to be paid out of the estate.