This is an action for partition of certain lands in Morris county, New Jersey. These lands belonged to William Dougherty, Sr., father of the complainant and of the defendants Adam Dougherty, David Dougherty and Mary Dougherty, now Mary Curtiss. William Dougherty died on November 9th, 1924.
The defendant sets up as a defense to the action an agreement between William Dougherty, Sr., and himself, wherein William, Sr., agreed to leave these lands to Adam, his son, providing that said Adam should care for the deceased and his wife during their lives.
There is no question as to the legality of such an agreement, if it can be established, and it is not such a promise as comes within the statute of frauds.
In Boulanger v. Churchill, 86 N.J. Eq. 96, Vice-Chancellor Lewis held: "Payment in services will not, as a general rule, take the contract out of the statute any more than payment in money, but some services cannot be measured by their money value, and were not intended to be so measured. Services of affection rendered by a child to its parents, rendered as consideration for an oral promise, cannot be compensated by money damages."
In Davison v. Davison, 13 N.J. Eq. 246, the chancellor held: "That the contract was by parole, and not in writing, while it greatly increases the difficulty of proving its terms, constitutes no valid objection to its enforcement. There has been a part performance on the part of the complainant [son]. He served his father several years upon the faith of the contract, and, as the evidence shows, faithfully and to the father's satisfaction. Part performance takes the case out of the operation of the statute of frauds."
See, also, the elaborate opinion by Chancellor Williamson, VanDyne v. Vreeland, 11 N.J. Eq. 370. *Page 128 
It is unnecessary to cite further authorities in this matter. The agreement, if properly proven, is a perfectly legal one.
We, therefore, come to a consideration of the evidence adduced at the hearing. Mrs. Dougherty, the widow, testified that her husband for a long time was in very poor health, and during the last six or eight years of his life was unable to earn any money; that Adam contributed to the support of the family, took care of his father and herself, and for six or eight years did all the work around the place, paid the taxes and repairs upon the house. She says that her husband told her he had agreed to leave the premises to Adam in consideration of Adam's promise to support his father and her during her lifetime.
Mrs. O'Brien, a friend of the family's, but no relative, testified that Mr. Dougherty told her he had agreed with Adam to leave the premises to him in consideration of Adam's promise to care for the old couple, as above stated. In 1922 she went to see Mr. Dougherty and his wife, and he then assured her that, according to the aforestated agreement, he desired and had agreed that the property should be Adam's.
It should be noted that all the other children except Adam left the homestead five or six years before the death of William, Sr., and David Dougherty, one of the sons, and his wife both said that shortly after their marriage, while on a visit to William, Sr., William, Sr., said: "David, you have left home and Adam has stayed here and taken care of us and has agreed to continue to do so, and I have agreed to leave the farm to him."
Another neighbor, one Martin, corroborates this still further. Moreover, there was introduced in evidence a deed, executed on April 22d 1925, before this action was started, by which the son David and his wife, and the daughter Mary and her husband, conveyed their interest in the property to Adam. This deed recites that it was given for the purpose of giving effect to the agreement between father and son.
The testimony is clear and distinct as to the agreement, and also as to the fact that Adam gave the best years of his *Page 129 
life to the service of his parents. He worked all day to procure the money to take care of his father and mother; he paid the taxes on the house and the repairs, and one of the witnesses says after he came home from his work elsewhere he worked far into the night doing the necessary farming work about the place in order to keep it in condition. Moreover, the testimony shows that Adam refused to take employment in Morristown, giving as his reason that, should he do so, he would be unable to give the care and attention and companionship to his parents which he had agreed to do.
He performed his share of the contract in full, and it would be, in my opinion, a gross fraud to say now that he should not have the agreement carried out in its fullest terms.
I shall therefore advise a decree dismissing the bill.