A bill was filed by complainant, George S. Lings, against his stepdaughter, Ethel L. Urquhart, individually and as executrix of the estate of Louise Mary Lings, deceased, his wife, wherein he alleges that in December, 1903, he purchased a tract of land known as Beechwood, at Orangetown, Rockland county, New York, for $3,000, and which, after having made improvements thereon, he and his wife, Louise Mary Lings, now deceased, sold in the year 1924 for $43,500; that his said wife, who was twenty years his junior, repeatedly suggested to him that he should convey the said property to her and that she in turn would make a will whereby she would devise said property to him; that pursuant to said understanding he, on or about September 15th, 1920, conveyed said property to his said wife, who in turn executed her will on that date by the second clause of which she devised said property to him; that subsequently he and his said wife entered into an arrangement for the purpose of changing the character of her devise to him under her will *Page 508 
of 1920, and pursuant to which she, on June 17th, 1924, executed a new will, the fourth clause of which purports to convey to a trustee therein named all of the residue of her property, both real and personal, with power in said trustee to invest same and to pay one-half of the income therefrom to complainant and the other one-half thereof to her daughter, the defendant herein; that his said wife died on June 19th, 1926, and that, on or about June 30th, 1926, defendant produced before the surrogate of Union county a paper dated February 9th, 1926, purporting to be, and which was admitted to probate as, the last will and testament of complainant's deceased wife, Louise Mary Lings; that not only was the will of 1926 procured by undue influence exerted on the part of the defendant, but that it was a violation of the defendant's understanding with complainant and constituted a fraud upon his rights in the premises.
Such, in brief, were the substance of the allegations made in complainant's bill. Upon his case, as thus stated, he predicates his right to, and now seeks, a decree which will secure to him the specific performance on the part of his deceased wife's representative of the oral agreements and understanding claimed by him to have been thus had with her, and especially adjudging and declaring him to be entitled to one-half of the income arising from her residuary estate during his lifetime, as well as directing the appointment of a trustee or trustees to assume and retain the possession and control of said residuary estate pursuant to the terms and provisions of the decedent's will of June 17th, 1924.
That equity, at the instance of a party who shall have completely performed it on his part, will specifically enforce a parol agreement of the character above referred to, if such be sufficiently proven and established, is a principle so well established by the adjudicated cases in this state, as to render the citation of any authority in support thereof unnecessary. And rightly so, for to hold otherwise would be to enable the party to such agreement, declining to perform on his part, to successfully perpetrate a fraud upon him, *Page 509 
who, relying upon and induced by said agreement, has in good faith so performed it as to have irretrievably changed his position to his disadvantage. Amongst the reported cases of our own state, wherein may be found a recognition and application of this salutary and beneficent equitable principle, are Casler v.Thompson, 3 Gr. Ch. 59; France v. France, 4 Halst. Ch. 650;Johnson v. Hubbel, 2 Stock. 332; Van Duyne v. Vreeland, 3Stock. 370; S.C., 1 Beas. 142; Davison v. Davison, 2 Beas. 246;Cooper v. Carlisle, 2 C.E. Gr. 525; Brewer v. Wilson, 2 C.E.Gr. 180; Eyre v. Eyre, 4 C.E. Gr. 102; Brown v. Brown, 6Stew. Eq. 650; Larison v. Polhemus, 9 Stew. Eq. 506; Schutt v.Missionary Society, c., 14 Stew. Eq. 115; Pflugar v. Pultz,16 Stew. Eq. 440; Young v. Young, 18 Stew. Eq. 27; S.C., 6Dick. Ch. Rep. 491; Nibert v. Baghurst, 2 Dick. Ch. Rep. 201;Drake v. Lanning, 4 Dick. Ch. Rep. 452; Duvale v. Duvale,56 N.J. Eq. 375; Eggers v. Anderson, 63 N.J. Eq. 264.
However, it has also been firmly established, by the foregoing, as well as other authorities, that a parol agreement of such a character, because of its very nature, the relationship and situation of the parties to it, as well as the attendant and consequent opportunity for the perpetration of fraud, is regarded with suspicion and subjected to close scrutiny whenever its enforcement is sought. It must be mutual, as well as being definite and certain in its terms and with reference to its subject-matter. The quality of the proof, relied upon to establish it, should be both clear and convincing (Cooper v.Carlisle and Brown v. Brown, supra; Clawson v. Brewer,67 N.J. Eq. 201) and should plainly demonstrate that those things, which are alleged and relied upon as part performance, are referable to and were done in consequence of and for the purpose of carrying the said agreement into effect. Eyre v. Eyre,supra; Pom. Spec. Perf. §§ 108, 109.
The claim that a legal obligation is assumed in favor of the party seeking its enforcement must be supported by evidence the effect of which is to establish something more than a mere consent on the part of the other party to make a will or an arrangement on his part, the fulfillment of *Page 510 
which is accomplished by the mere making of a will. This, of necessity, must follow by reason of the ambulatory characteristics and those qualities of mutability which are inherent to wills.
Having in mind — if complainant's own version be true — that, although he had the benefit of legal advice, as well as ample opportunity to procure and exact, if necessary, from his wife a writing evidencing her alleged agreement, complainant failed or did not see fit to do so; and also bearing in mind the fact that death has now sealed the lips of her who is charged with having made this alleged oral agreement, I cannot say, after a careful consideration of all of the evidence before me, aided by my observations of the conduct, demeanor and manner of testifying of each of the witnesses upon the stand, that I am satisfied that complainant has established this alleged oral agreement. However, I am fully convinced that the quality of the proof adduced by complainant fails to satisfy the standards required and defined by the authorities in point. At the very best, it is doubtful, uncertain and unsatisfactory, which circumstance alone is sufficient to stay the hand of this court.
No useful purpose can be served by a review and discussion of the evidence at length. Suffice it to say that the complainant in one instance testified that he conveyed the property to his wife because she, after he had informed her that he would have nothing in case anything happened to her, had assured him that she would will it back again to him in case anything happened to her; while he, in another instance, in replying to my inquiry as to his reason for having done so, at first testified that he gave it to her "absolutely," then "because of his love and affection for her" and finally because of her solicitations, which were actuated by her desire to avoid losing the property in the event of his business failure. His own testimony showed that at the time of this conveyance he was possessed of other property as well as of a business in which he had invested $150,000.
George Bristol was the only other witness who testified with reference to the alleged agreement pursuant to which it *Page 511 
is claimed the conveyance was made by complainant. He admitted that for the last thirty years, of the thirty-seven that he had been practicing, he was the legal adviser, friend and business associate of the complainant. His testimony also disclosed the fact that he had represented complainant in connection with the enforcement of certain claims which he had asserted against this very estate, and that he aided and counseled in the proceedings following the filing of a caveat by complainant against the probate of the decedent's will, and that he was also assisting complainant in this very litigation. That he was most vitally interested and concerned in the outcome of the present controversy cannot be questioned.
From my observations of his conduct, demeanor and manner of testifying while on the stand, having in mind his relationship and interest in this case, and in view of the fact that his entire testimony with reference to the alleged oral agreement, made more than eight years before, was based upon his mere recollection, and, in a great many respects, was not in accord with that of the complainant, I am constrained to say that I am neither satisfied with nor convinced by it. He failed to make any mention of that part of the conversation wherein complainant claims to have informed his wife that he would have nothing if anything happened to her, and that she then assured him that she would make that alright by willing the property to him He only states that complainant's wife told him that she had agreed to make a will giving the property back to her husband, in case she predeceased him, and that her husband then said it was alright. It is significant, indeed, that not even complainant corroborates him as to this alleged conversation with complainant's wife, although complainant is supposed to have been present at the time.
If the design and intent of the parties were to effect an arrangement whereby, at all events, the property should revert to the complainant upon the decease of his wife, it seems improbable and incredible to me that Mr. Bristol, as complainant's legal adviser, knowing as he did that the agreement, without being reduced to an irrevocable writing, was *Page 512 
at best fraught with legal frailties and infirmities — since he claims to have called this fact to the attention of complainant — would nevertheless not take the common ordinary precaution to safeguard the interests of his client by reducing the agreement to a writing for execution by the parties to it. He at least could have made some memorandum of or reference to it in the deed or the will which he had drafted. His failure to do any of these things under the circumstances has not been satisfactorily accounted for.
On the other hand, the evidence points strongly to the fact, and I feel quite satisfied from it, that the property was conveyed by complainant to his wife for the purpose of placing it beyond the reach of his creditors. He himself admitted that his company — for which he had given out his personal notes — had suffered considerable business losses and was experiencing business difficulties prior to, and at the time of, his conveying said property to his wife, and by reason of which his wife had suggested to him that he convey the property to her because of her fear that he would lose it through his business reverses, and that he acceded to her said request.
To like effect was the testimony of his star witness, George Bristol. He, too, testified that the bottom of the textile market (the complainant was then engaged in the textile business) had dropped out in the spring of 1920, and that complainant's wife had informed him that she was disturbed and quite apprehensive about her husband's financial condition, and the fact that he was giving his personal notes for his company and that she, therefore, wanted the property in question so fixed that she wouldn't lose it He also admitted that it was he who had asked her to withhold the deed from the record because of his fear that the company's credit would be hurt by its recording.
It seems that the salvaging of this piece of property from the impending financial difficulties of the complainant was foremost and uppermost in the minds of all parties, including that of Mr. Bristol. And that this was the very purpose and reason for which the conveyance was made, I *Page 513 
have no doubt. It certainly dispels, or at least overweighs, the reason advanced by complainant for the said conveyance, namely, because of the alleged oral agreement.
The evidence with reference to the alleged agreement between complainant and his wife in 1924 — the purpose of which was to modify that of the year 1920 — in addition to being far more meagre, frail and unsatisfactory, is also subject to the same criticism which I find to exist against that offered on behalf of the complainant with reference to the existence of the alleged agreement of 1920.
For the reasons indicated by me, I will advise a decree dismissing the bill. *Page 514