The bill of complaint seeks the specific performance of an alleged oral agreement to make a will in favor of complainant.
Complainant, Frank Ehling, at the age of fourteen years in the year 1913 entered the employment of one Ignatz Kulat, who operated a meat market in Jersey City. His position at the time was that of "order boy." He stated that he also drove Mr. Kulat's private car for Mr. and Mrs. Kulat. Complainant continued to be employed until shortly before Mr. Kulat's death which occurred in 1917. After Mr. Kulat's death, his widow, Mrs. Kulat, continued the business. Several months after the death of Mr. Kulat, Mrs. Kulat engaged the complainant to again work at the butcher shop. Complainant was then eighteen years old. About this time complainant claims that Mrs. Kulat agreed to make a will leaving everything she possessed at the time of her death to him. He alleges that thereafter he became the constant companion of Mrs. Kulat. During the employment period he took Mrs. Kulat for rides in her car and claims that he spent practically all his time with her. At the same time he courted and finally married his wife. Complainant and his *Page 117 
wife claim that his devotion to Mrs. Kulat nearly disrupted, or for a time did disrupt, his marriage. The complainant's wife testified that complainant spent from one to two hours every evening, when he was not with Mrs. Kulat, talking to her over the telephone endeavoring to cheer her when she was melancholy. It is claimed that he helped her with her household duties, collected her rents and looked after some of her banking matters. During this period he still continued to work in the butcher shop except for periods when his overindulgence in liquor prevented him from working. The salary which he received apparently was commensurate with the services which he rendered. Mrs. Kulat died in March, 1939.
The witnesses produced by the complainant to prove the agreement between complainant and Mrs. Kulat consisted of complainant's wife, his father-in-law, his brother, a former customer of the store and complainant's solicitor. The testimony given by the wife, father-in-law, brother and customer of the store was objected to on the ground that it was hearsay. This testimony consisted of conversations between the witnesses and Mrs. Kulat. I have concluded that this testimony comes within the exception of the hearsay rule which permits such declarations of the decedent on the ground that they are statements against interests. Rusling v. Rusling, 36 N.J. Eq. 603. I have, therefore, considered the testimony of these witnesses in arriving at my conclusions. Naturally complainant's wife, father-in-law and brother are likely to be biased in the matter because of their relationship. I am not convinced of the truth of their testimony. The testimony of Mr. Hubener, the customer of the store above mentioned, appeared to me to be very doubtful. It does not seem probable that Mrs. Kulat would have said to him for no reason and without any conversation which might lead to a statement of her relation or feeling toward the complainant that when she "passed out everything would go to Frank Ehling; that he was deserving of everything." There was no testimony of these witnesses which referred specifically to a will. Solicitor of complainant testified that Mrs. Kulat called at his office on August 18th, 1932, relative to a business *Page 118 
transaction concerning houses which she owned. At that time complainant's solicitor testified that she told him she wanted to make a will and that he knew her relation with Frank Ehling and she had promised to make a will and leave everything to him which promise was made immediately after her husband's death. She never, however, instructed complainant's solicitor to prepare the will.
I reserved the right to consider whether or not this testimony was admissible as privileged. I am inclined to believe that it was a privileged communication and not admissible under the rule laid down in Anderson v. Searles, 93 N.J. Law 227. Assuming, however, that the testimony was admissible it does not appear from that testimony that she made a contract or agreement with complainant to leave him all of her property.
Mr. Hoffman, also an attorney of this state, testified that in the spring of 1938 Mrs. Kulat engaged him to prepare a will. He stated the will was prepared and mailed to her. She returned the will to him with certain notations for changes. He prepared a second draft and mailed that to Mrs. Kulat. He did not hear from her and visited her at the meat market where he talked to her about five minutes and left without the will being signed. This redrafted will was offered in evidence which, after making specific bequests of about $60,000, devised the residue of her estate to the complainant. The reason for such devise to the complainant, according to the wording of the proposed will, was, "owing to our personal friendship for over a period of twenty-five years." Complainant urges that this is corroboration of the agreement under the case of Laune v. Chandless, 99 N.J. Eq. 186,187. In the Laune Case the will had been signed by the testator but was not valid for the reason that it lacked the witness required by the statute. The will in the case cited stated the reason for the bequest to be "in consideration for services rendered in keeping house for me since the death of my wife without any compensation." These two facts distinguish it from the draft of the will offered in evidence in this case. The expression in the proposed will in this case is merely that of friendship and nothing more. In addition *Page 119 
to this, Mrs. Kulat apparently was not satisfied with the bequests therein set forth as she did not sign the same or offer to do so.
Equity will specifically enforce a parole agreement to make a will in order to prevent a fraud upon one who, relying upon the agreement, has in good faith performed his part and in so doing has changed his position to his disadvantage, provided the agreement is sufficiently proved. Such alleged agreements, however, are always regarded with suspicion and subjected to the closest scrutiny. They must be definite and certain in their terms and the proof thereof must be clear and convincing.Clawson v. Brewer, 67 N.J. Eq. 201; Lings v. Urquhart,106 N.J. Eq. 506; affirmed, 109 N.J. Eq. 131; McTague v. Finnegan,54 N.J. Eq. 454; affirmed, 55 N.J. Eq. 588; Scott v. Beola,111 N.J. Eq. 215; In re Calef, 109 N.J. Eq. 181; affirmed, 111 N.J. Eq. 355.
Complainant claims that by reason of the alleged agreement and the devotion which he bestowed on Mrs. Kulat he gave up an opportunity to enter into business in New York to his own detriment. I believe that the trouble between complainant and his wife was due in a large measure to his intoxication at frequent intervals. However, complainant and his wife appear to have become reconciled during Mrs. Kulat's life and the wife joined with her husband in attending upon her and accompanied them on their rides. There was nothing in the evidence to justify the claim that complainant was not adequately paid for his services.
I have concluded that the proofs submitted do not meet the burden necessary to support the allegations of the bill of complaint. It may be that Mrs. Kulat intended to make complainant a legatee under her will. A promise to make a will for the benefit of another and a contract to make a will are far different. In order to enforce a contract to make a will it must be supported by consideration. Ackerman v. Ackerman's Ex'rs,24 N.J. Eq. 315; affirmed, Ibid. 585. The acts and conduct of the complainant do not constitute such a performance as would take an oral agreement on the part of Mrs. Kulat out of the statute of frauds. R.S. 25:1-5; N.J.S.A. 25:1-5. The bill of complaint will, therefore, be dismissed. *Page 120