It was as early as the year 1854 that Chancellor Williamson determined in this court that a person might for a valid consideration enter into a verbal agreement to make a particular disposition of his property by his last will and testament. The specific enforcement of such an agreement, however, has always been subject to certain evidential requisites. It is imperative that the agreement be shown to be mutual and definite and certain both with relation to its terms and subject-matter. The creation of the agreement must be established by clear, cogent, and convincing proof because such alleged compacts, particularly between relatives, are uniformly regarded with suspicion and consequently are exposed to the most critical and circumspect scrutiny. Additionally, there must be evidence of performance of that character which under recognized equitable principles will exclude the transaction from the operation of the statute of frauds.
It may be serviceable to cite my collation of the pertinent decisions: Johnson v. Hubbell, 10 N.J. Eq. 332; Van Dyne v.Vreeland, 11 N.J. Eq. 370; Van Duyne v. Vreeland, 12 N.J. Eq. 142; Davison v. Davison, 13 N.J. Eq. 246; Brown v. Brown,33 N.J. Eq. 650; Pflugar v. Pultz, 43 N.J. Eq. 440;11 Atl. Rep. 123; Young v. Young, 45 N.J. Eq. 27; 16 Atl. Rep. 921;Vreeland v. Vreeland, 53 N.J. Eq. 387; 32 Atl. Rep. 3; McTague
v. Finnegan, 54 N.J. Eq. 454; *Page 615 35 Atl. Rep. 542; affirmed, 55 N.J. Eq. 588;39 Atl. Rep. 1114; Riley v. Allen, 54 N.J. Eq. 495; 35 Atl. Rep. 654;Duvale v. Duvale, 54 N.J. Eq. 581; 35 Atl. Rep. 750; modified,56 N.J. Eq. 375; 39 Atl. Rep. 687; Winfield v. Bowen, 65 N.J. Eq. 636; 56 Atl. Rep. 728; Cooper v. Colson, 66 N.J. Eq. 328;58 Atl. Rep. 337; Clawson v. Brewer, 67 N.J. Eq. 201;58 Atl. Rep. 598; affirmed, 70 N.J. Eq. 803; 67 Atl. Rep. 1102;Dougherty v. Dougherty, 98 N.J. Eq. 126; 130 Atl. Rep. 833;Lings v. Urquhart, 106 N.J. Eq. 506; 151 Atl. Rep. 391;
affirmed, 109 N.J. Eq. 131; 156 Atl. Rep. 377; Di Girolama v.Di Matteo, 108 N.J. Eq. 592; 156 Atl. Rep. 24; Scott v. Beola,111 N.J. Eq. 215; 161 Atl. Rep. 822; Burdick v. Grimshaw,113 N.J. Eq. 591; 168 Atl. Rep. 186; Ehling v. Diebert, 128 N.J. Eq. 115; 15 Atl. Rep. 2d 655; affirmed, 129 N.J. Eq. 11;17 Atl. Rep. 2d 777; Hendershot v. Hendershot, 135 N.J. Eq. 232; 37 Atl. Rep. 2d 770; Poloha v. Ruman, 137 N.J. Eq. 167; 44 Atl. Rep. 2d 411; Hufnagel v. Scholp,138 N.J. Eq. 16; 46 Atl. Rep. 2d 394; Yuritch v. Yuritch,139 N.J. Eq. 439; 51 Atl. Rep. 2d 901.
The point of paramount and salient importance in the consideration of the present cause is whether a verbal contract definite in its terms, as here alleged, has been substantiated by evidence of the requisite probative quality.
To comprehend precisely the presentment of the complainants I quote literatim the allegations of paragraph 3 of the bill of complaint:
"3. On or about September 15, 1944 (the precise date being unknown to complainant), complainants and defendant duly made and entered into, each with the other, a certain compact and agreement, by word of mouth and not in writing, wherein and whereby it was mutually promised and agreed by and between them that complainants would within a reasonable time thereafter remove from and given up their then home, situate at Port Richmond in the borough and county of Richmond and state of New York, and would move into and take possession of said land, dwelling house and premises of the defendant hereinbefore described; that complainants would thereafter and during and throughout the residue of *Page 616 
the lifetime of defendant, board and lodge him and furnish for his use and comfort all necessary food, rooming facilities and personal care; that complainants would, so long thereafter as defendant should live, operate and maintain said dwelling house as a home for defendant and themselves and such other persons as might lawfully be therein, and would pay the current running expenses for food and supplies, water, electricity, gas, heat and other utilities and necessities for the maintaining of said premises as a home for the parties; and that in consideration of such promises and agreements on complainants' part, defendant should and would devise to complainant Martha M. White, and to her heirs and assigns forever, all and singular the hereinbefore mentioned and described land, dwelling house and premises, effective as and of the time of his death; and that defendant should and would make and execute in due form of law, and thereafter maintain and keep in full force and effect until the time of his death, a good and valid last will and testament, whereby said land, dwelling house and premises would be devised to and vested in complainant Martha M. White in fee simple; that defendant would, so long thereafter as he should live, pay all taxes assessed against said premises, and would maintain and keep said land and buildings in good and habitable condition and provide, at his own expense, for the upkeep thereof, and that complainants should not be liable for any rent or other charge for occupancy thereof."
In 1944 the defendant was a widower approaching eighty years of age and he was residing, with the occasional assistance of a domestic servant, by himself in his home identified as No. 107 Willow Avenue, North Plainfield, Somerset County. The complainants Mr. and Mrs. White, residents of Port Richmond, Staten Island, New York, evidently became interested in his welfare. Mr. White is a nephew of the defendant's deceased wife, and the complainants therefore became accustomed to address the defendant as "Uncle Grant."
The complainants visited and consorted with the defendant at his home on September 10th, 1944, on which occasion the complainants declare the alleged agreement was organized. *Page 617 
The defendant admits that on that occasion Mrs. White expressly deplored his solitary and desolate existence and offered the suggestion that to alleviate his lonesome situation she and her husband would be willing to reside with him and that she would "take care" of him. The defendant emphatically denies that on that occasion any mention was made of his alleged obligation to devise his home to Mrs. White. The probabilities and uncontroverted succeeding occurrences induce me to believe him. Four days later Mrs. White alone called upon "Uncle Grant" and persuaded him to return with her to her home on Staten Island, where he accepted her hospitality for a few days. The complainants assert that during that period the alleged agreement was ratified and confirmed by the statements of the defendant. The defendant relates that the subject relative to the complainants' moving into his home was several times injected into the conversation but that he deliberately refrained from announcing any assent to the proposal because he had not definitely "made up his mind."
Again I believe him because it is admitted that upon his return to North Plainfield he resolved to consult his domestic maid and prudently to prepare in writing a memorandum of the terms upon which the complainants might, with his consent, assume the maintenance and supervision of his household. It is acknowledged that he composed a letter or memorandum in which he stated his acquiescence in the plan that the complainants should share the home with him, and in which he specifically enumerated the household expenses which in such event the complainants would be obliged to defray.
It was on the same day on which the defendant completed his memorandum and before he had placed it, as intended, in the mail, that Mrs. White again arrived at his home and consequently he personally presented the memorandum to Mrs. White. The complainants assure me that the memorandum has unfortunately been mislaid and that they are now unable to produce it. It is nevertheless acknowledged that the memorandum, although expressive of the obligations of the complainants, did not contain even the intimation of *Page 618 
any covenant by the defendant to make a testamentary devise of the premises. The circumstance that the terms of the memorandum were primarily unilateral is a factor to which I ascribe some significance.
On October 15th, 1944, the complainants entered the home at North Plainfield where they and the defendant continue to reside.
Another incident has also engaged my attention. The complainants tell me that it was not until November, 1944, that they fortuitously learned for the first time that the property was encumbered by a past due mortgage of $6,000. The defendant has currently paid the taxes and the interest on the mortgage. If the transaction between the complainants and the defendant was in truth a mutual bargain in which the succession of the complainants to the title of the property constituted an influential consideration, it seems improbable that the complainants in such a situation would have neglected to inquire about existing liens. An explanation fell from the lips of Mrs. White when at the final hearing she divulged that in the absence of any agreement to devise the property to her, she would have nevertheless pursued the same course by reason of her regard and concern for the personal welfare of the defendant. Her effort, after the noon recess, to retract or qualify her admission was unimpressive. I fear that the complainants relied upon an expectation, not upon a promise.
An additional doubt survives. Mrs. White testified that the defendant covenanted to devise the premises to her. Such is in accord with the charges of the bill. Mr. White, however, represents the agreement to have required the defendant to devise the property to both complainants. The divergence in the proof induced counsel for the complainants at the close of the hearing to amend the bill to embrace an allegation in harmony with the testimony of Mr. White. Hence the ambiguity would naturally dispatch me on a roving commission.
The defendant positively denies the existence of any agreement on his part to devise the property to both or either of the complainants. He expressed the supposition that the complainants derived their ideas from a casual conversation which he had with Mrs. White during the period of their *Page 619 
co-occupancy of the house, in which she remarked that he could sell the house at any time and "put us out," to which he replied, "I have no such intention. I am contemplating leaving the property to you." He avowed that it was to avoid any misunderstanding that he carefully prepared the memorandum containing all the terms of the arrangement to which he assented. The loss of the memorandum also intensifies the critical scrutiny to which the evidence must be exposed.
I shall not comment upon the correlative features of the case further than to state that if I were convinced that there was an agreement as alleged, I would be inclined to resolve the other essential elements of the cause of action in favor of the complainants.
One might wonder what precipitated this litigation. Well, Uncle Grant has discovered a sweetheart, and the complainants apprehend that he is likely to enter more punctually into the field of matrimony than into the Kingdom of Heaven.
My conclusion that the complainants have failed to establish a definite mutual agreement by clear, cogent, and convincing proof, obliges me to dismiss the bill.
Decree accordingly.
 *Page 1