The facts in this case are not in dispute. On March 16th, 1918, Antoinette Somisso was a child in the custody of the New York Foundling Hospital, and was by that institution, under the authority of its charter, and pursuant to, and in consummation of, a written agreement, under seal, between the said institution as party of the first part and Michael Di Matteo and Antonina Di Matteo, his wife, as parties of the second part, indentured to and placed in the care and custody of the said Di Matteos.
The agreement recited that the child was then aged four years and one month, and provided that this care and custody should continue until the child attained age eighteen; that during that time she should live with them, and be treated by them as their own child; that they might return the child to the hospital prior to her attaining age eighteen.
Paragraph 8 of the agreement reads as follows:
"And the parties of the second part further agree that if said child be not returned to the party of the first part when she attains the age of eighteen years, or shall not have been so returned before he shall have attained such age and this agreement of indenture be duly canceled and annulled by the consent of both parties, or if said child be not legally adopted by said parties of the second part before said child attain such age, then the parties of the second part, in consideration of this indenture and of being permitted by the party of the first part to keep such child, shall be deemed to have elected to keep, treat and maintain said child as if it were their own natural and legitimate child. And the parties of the second part further agree that if the parties of the second part shall die intestate, said *Page 594 
child shall inherit and succeed to such share of the property, real and personal, of which the parties die seized and possessed as would have descended or would have been distributed to said child if he had been the natural and legitimate child of the parties of the second part; and that if the parties of the second part shall die leaving a last will and testament, such will shall contain a provision or provisions, giving, bequeathing and devising to said child at least as large a share of the estate, real and personal, of the testator, as she would have received if said testator had died intestate and said child had been the natural and legitimate child of the parties of the second part."
The child was not returned to the hospital by the Di Matteos — on the contrary, she was legally adopted by them shortly after they obtained her custody as aforesaid, and has since lived with them as their child.
On January 30th, 1931, Michael Di Matteo died apparently intestate, and his wife was appointed administratrix of his estate. Later a will was found — which was probated after the filing of the present bill — whereby decedent gave and devised all of his property to his wife, who (inferentially) was named as executrix. Decedent left from $1,000 to $2,000 in personal property, and from $5,000 to $8,000 in real estate. The wife, individually and as administratrix and executrix, has refused to recognize any claim of the child to any part of this estate, and intends to dispose of all of it as her own.
The child fully performed and conducted herself as an obedient child, pursuant to the terms of the agreement, until she was married to Joseph Di Girolamo on April 8th, 1931, except that defendant says that subsequent to the death of Michael, the complainant "associated with people whom defendant did not want her to associate with" and that the marriage was without defendant's knowledge and consent.
The matter came up on order to show cause why restraintpendente lite should not be granted against defendant disposing of the share of decedent's estate claimed by complainant; but by agreement of both parties, it is to be deemed as on final hearing, on bill and answer, and the determination will be dispositive of the whole case. *Page 595 
It is unnecessary to cite authority for the well established principle that a contract to give or devise by will is enforceable in equity. It is equally true that the suit may be maintained by the child for whose benefit the agreement was made, notwithstanding she was not a party to the agreement. Van Dyne
v. Vreeland, 11 N.J. Eq. 370; Kamens v. Anderson, 99 N.J. Eq. 490.
These principles, indeed, are not disputed by defendant.
It is the contention of defendant that paragraph 8 of the agreement above quoted is to be legally construed and interpreted as if the words "and in such case" were inserted immediately preceding the second sentence in that paragraph; in other words, that the promise to leave a portion of the estate to the child by will or intestate succession is conditioned upon the child not having been returned and not having been adopted — that the adoption terminated and canceled the agreement.
In support of this contention, defendant cites the determination of the supreme court of Nebraska in Fenlon v.Fenlon, 95 Neb. 322 — a case involving a contract similar to the one sub judice.
In that case, however, the child had not been adopted; and the actual determination was that since she had not been adopted, and had not yet attained her majority, there was no limitation of the express right reserved to the "custodians" to elect at any time
prior to the child's attaining her majority, whether they would return her to the hospital or keep her as their own; and that until they made such election, upon her becoming of age, she would not become entitled to take a share of the estate.
In the instant case the child was adopted. Upon and by that adoption, it seems clear the defendant and her husband made a definite and final election to keep the child as their own, and surrendered and terminated the right, otherwise reserved by the contract, to return her to the hospital upon her becoming eighteen years of age.
It seems also clear that what the parties intended, and that the true interpretation and meaning of paragraph 8, *Page 596 
is, that unless the "custodians" should elect to return the child to the hospital at or before she attained eighteen years of age, then the child should inherit or succeed to the share of the estate, as specified.
The provision that she shall so inherit or succeed to, is not in anywise made conditional upon her not having been adopted — either by evident intendment or by express technical phraseology. The actual expression is that "if the child is not returned when she attains eighteen" (or has not been previously returned or adopted), the custodians shall be deemed to have elected to keep her as their own child.
The effect of the adoption is that they made that election earlier. And the meaning of the second sentence of paragraph 8 is that if they elect to keep her as their own child — whether by adoption or failure to return — she shall inherit or succeed to the share of the estate.
It follows that complainant is entitled to decree that defendant pay over to her, upon the due administration of the estate of decedent, a share of the estate equal to that to which she would have succeeded had she been the natural child of decedent and he had died intestate — and restraining any other disposition of such share.
Some mention should perhaps be made as to the allegation in the answer that "from and after the death of Michael Di Matteo, complainant has not performed and conducted herself as an obedient child but associated with people whom defendant did not want her to associate with and finally without the knowledge and consent of defendant married * * * Joseph Di Girolamo on April 8th, 1931."
In the first place these allegations are not expressly set up as constituting disobedience or non-performance sufficient to amount to failure of consideration so as to disentitle complainant to the share of the estate; neither was any such contention made in the argument or brief. This is sufficient to render unnecessary any consideration of it as a defense. *Page 597 
In the second place — assuming the allegations to be true — they do not amount to allegations of non-performance sufficient to disentitle complainant to recover. The allegation amounts only to this — that between January 30th, 1931, and April 8th, 1931, complainant associated (to what extent is not alleged — it may have been very little) with people whom complainant did not want her to associate with. No reason is given as to why complainant did not wish such association. It may have been entirely unreasonable on the part of defendant. Nor is the allegation as to the marriage any stronger. It does not appear that there was any reason why complainant should not have married the man she did marry — nor even that complainant would have refused her consent if she had known of the intended marriage — nor that the "association" or the intended marriage, was not entirely satisfactory to Michael before his death.
In the third place, it does not appear that complainant had not attained age eighteen. The only allegation or evidence as to her age is the recital in the agreement that on March 16th, 1918, she was four years and one month old. This might raise a presumption, in the absence of other proofs. But on the other hand, if the complainant were not eighteen years old at the time of the marriage, it would have been a criminal offense for anyone to marry them without a license, and a criminal offense for a marriage license to have been issued without the consent of her adopted mother, and a criminal offense for her to have certified falsely as to her age being eighteen. The presumption is against any such criminal offense having been committed, and this presumption outweighs the presumption from the agreement that she was not eighteen. Hence the finding, on the facts before the court, would have to be that complainant had attained eighteen before her marriage. The agreement as to obedient performance runs only until she attains age eighteen. *Page 598