The bill of complaint in this case was filed for the purpose of compelling the executors and trustees of Charles F. Hendershot, deceased, to specifically perform an alleged oral agreement made between the testator and the mother of the complainant whereby the testator bound himself to adopt the complainant and to make a will bequeathing and devising to the complainant a share of testator's estate amounting to at least as much as the complainant would receive if the said Charles F. Hendershot died intestate and the complainant had been his natural and legitimate son. The complaint also alleges that under the said oral agreement complainant is and occupies the status of an adopted child of the testator and is entitled to so much of the real and personal estate of Charles F. Hendershot, deceased, as complainant would have *Page 234 
received had the testator died intestate and complainant had occupied the status of an adopted child. The complainant, George C. Hendershot, is the son of Edith C. Hendershot by a former marriage.
Charles F. Hendershot, the testator, died on November 29th, 1939, leaving a last will and testament dated December 14th, 1938, which was duly admitted to probate. The will devises and bequeaths his real and personal estate to his executors, in trust, and directs them to pay one-third of the income to his widow, the mother of the complainant, during her life and the balance of the income to Charles F. Hendershot, Jr., an infant, the only issue of the marriage of the testator and the mother of the complainant, with a contingent remainder over to the next of kin and heirs-at-law of the testator living at the time of the death of his said son, Charles Hendershot, Jr. The contingent remainder would have gone to John T. Hendershot, a brother of the testator, if he were living and the contingency occurred. John T. Hendershot, however, died without issue after the hearing. The will makes no provision for the complainant. This disposition of the estate, complainant contends, is contrary to and in violation of the alleged agreement.
Mrs. Hendershot, the widow of the testator and the mother of the complainant, was the principal witness. She testified that prior to the year 1919 she had been married to one Duquette from whom she was divorced in that year. There were two children born of her marriage to Duquette, the complainant, then known as George Lionel Duquette, and another son who died in 1921. After her divorce from the said marriage she supported herself and her two sons by teaching school at the Rockaway High School. She subsequently met Charles F. Hendershot, who was at the time in business at Dover, and later became engaged to marry him.
About the middle of the year 1921, Charles F. Hendershot was called to Newton by Robert Snook, then the owner and proprietor of the Cochran House, a hotel in said town, to take over its active management. In the fall of that year, Mr. Hendershot told his fiance that Mr. Snook was considering selling the hotel and that he and Mr. Snook had arrived *Page 235 
at a gentlemen's agreement that he would have the first option to purchase.
The prospect of acquiring this well-known hotel was the subject-matter of many conversations between Mr. Hendershot and Mrs. Duquette. They considered ways and means of raising the necessary funds to make the down payment on the purchase price. Mr. Hendershot asked Mrs. Duquette how much money she would be able to raise for the purchase and she replied that she would probably be able to contribute about $10,000. Her assets, at the time, consisted of cash on hand, money in banks, an endowment policy with a substantial cash value, jewelry, a number of Liberty Bonds, and certain articles of furnishings which could be used if the hotel were purchased. She was also able to borrow several thousand dollars from her mother and her brother. This she did and later repaid them the loans.
Before Mrs. Duquette became engaged to marry Mr. Hendershot, she began to lay aside funds which she intended to use for the education of her two boys. While she was willing to help Mr. Hendershot she was also concerned about the safety of her savings. One of her children died and she depended upon the money which she had accumulated and which she would accumulate in the future for the education of her surviving son, the complainant. She informed Mr. Hendershot of this situation and he told her that inasmuch as they soon intended to marry he would not only legally adopt the complainant but would also make a will leaving everything to the boy. Relying on these promises she made her contribution toward the purchase and furnishings of the hotel.
Charles F. Hendershot married Mrs. Duquette on December 28th, 1921. She continued as a teacher until the end of January, 1922, when she joined her husband in Newton. They took possession of the Cochran House on March 1st, 1922. The complainant remained with his grandparents until April 1st of that year, at which time he came to Newton to live with Mr. and Mrs. Hendershot. He was then thirteen years old.
Mr. Hendershot wished the boy to bear his surname and *Page 236 
complainant was, therefore, entered in the Newton public school as George Cox Hendershot by which name he has always been known in the community. He worked at the hotel after school, first as errand boy then as bellboy, and some years later worked in the lanndry, the kitchen and other departments. He received training in the various phases of the hotel management and operation under the guidance and control of his foster-father, who treated him as a son.
On December 27th, 1924, Mrs. Hendershot gave birth to a son, Charles F. Hendershot, Jr., who was the offspring of her marriage to the testator. This boy, at first, appeared to be normal but it afterward developed that he is a micro-cephalic with a mental age of about seven or eight years. Mr. Hendershot appeared to be very happy over the arrival of this boy and told his wife that, "I will have to make a provision for Junior and George to share equally in our estate." Mrs. Hendershot agreed that this would be the proper thing to do.
Mrs. Hendershot did not know that no provision had been made for the complainant until after Mr. Hendershot's death.
The testimony of Mrs. Hendershot is corroborated by her mother, Catherine E. Cox. Mr. Hendershot told his wife in the presence of Mrs. Cox that he would adopt the complainant and would provide for him by will. Her testimony is also corroborated by other witnesses, all of whom appear to be credible and disinterested.
Mrs. Mackerley, a nurse who attended Mrs. Hendershot at the time of the birth of Charles F. Hendershot, Jr., was present when Mr. Hendershot made the statement that he would have to make provision for both Junior and George to share in the estate.
Mrs. Cohen, a friend of the Hendershot family, testified that she and her husband met the Hendershots while on trips to Florida and England. On several of these occasions conversations took place concerning the status of the complainant and in which Mr. Hendershot said that when he acquired the hotel he had promised to leave his estate to George. She also testified that on two occasions Mr. Hendershot had stated that he had made a will leaving everything to George. The *Page 237 
Cohens made a trip to England for the purpose of making arrangements to adopt a son of Mr. Cohen's sister and while discussing this matter with the Hendershots, Mrs. Hendershot reminded her husband that he had never formally adopted George, to which Mr. Hendershot replied, "Well, you know I have left everything in my will to George and Junior. What more do you want?" Mrs. Hendershot then said, "Well, I know, but you still should adopt him," to which Mr. Hendershot answered, "Of course. I will take care of it when we get back." This conversation took place in February, 1936.
It is the settled law of this state that a contract to give, devise or bequeath by will is enforceable in equity. It is also true that a bill to enforce specific performance of such an agreement may be maintained by a child for whose benefit such an agreement is made and this is so whether or not such child was a party to the agreement. DiGirolamo v. DiMatteo, 108 N.J. Eq. 592.
This court will order the specific performance of agreements of this nature when to do otherwise would result in palpable injustice. Where one party to a parol agreement has wholly or partially performed it on his part, the nonfullment by the other party is deemed to be a fraud against which this court will afford relief. Johnson v. Hubbell, 10 N.J. Eq. 332. Parol agreements of this character, however, are subjected to close scrutiny. They are permitted to stand only when established by evidence that is clear, cogent and convincing, leaving no doubt with respect to their actual making and existence. Burdick v.Grimshaw, 113 N.J. Eq. 591, and cases cited.
I believe the testimony of Mrs. Hendershot and I cannot think that she would testify falsely to benefit one son at the expense of the other and herself.
As some of the witnesses have testified, it was not until the institution of this suit that some of them knew that George was not in fact the son of Mr. Hendershot.
Defendants contend that the consideration for the agreement was the promise of Mrs. Duquette to marry Mr. Hendershot. *Page 238 
Mrs. Hendershot denied this and stated that she and Mr. Hendershot would have been married in any event.
Some of the defendants moved to amend their answers to include a separate defense by alleging that the contract was in consideration of marriage and not enforceable under the statute of frauds. No such motion was necessary on behalf of the infant defendant for the reason that he is entitled to any and all available defenses whether pleaded or not. After fully considering the evidence, it appears that the promise was not made in consideration of marriage. The motion, therefore, is denied.
The consideration which supported the agreement was the change in the circumstances and position which resulted from the contribution which Mrs. Hendershot made toward the purchase of the hotel. She assumed the risk of losing the funds which she was accumulating for the education of the complainant and there was no certainty that the hotel venture would prove successful. Her son, George, changed his position by submitting himself to the parental control of his foster-father and contributing his services as above mentioned. The services which he rendered were more than those ordinarily rendered by a child to his parents. The testimony indicates that Mr. Hendershot was a hard taskmaster.
I have reached the conclusion that there should be a decree for the complainant. The executors should pay to the complainant a share of the testator's estate equal to that which the complainant would have taken had he been the lawful issue of the testator and the testator had died intestate. DiGirolamo v.DiMatteo, supra. The portion of the estate which is not readily distributable should be held by the executors as trustees for the benefit of the complainant until such time as distribution can be made. *Page 239