By her bill of complaint Shirley Hufnagel seeks to enforce an agreement alleged to have been made by her grandmother Augusta Schoelling with her father William Hufnagel, that if Hufnagel would (1) have the remains of her (Augusta's) husband removed from a cemetery plot in which he had been buried and reinterred in a crypt in a section of crypts owned by Hufnagel in a certain mausoleum and (2) would agree to inter the remains of Augusta Schoelling upon her death in another of said crypts and (3) would permit Augusta Schoelling, as long as she lived and so desired, to reside in his household or in any home owned by him, free of any obligation *Page 17 
to pay rent she, Augusta Schoelling, would bequeath all her estate to her grandson Martin Winkler and to her granddaughter Shirley Hufnagel, share and share alike. The bill of complaint alleges that Hufnagel performed his part of the agreement but Augusta Schoelling died leaving a will whereby she disposed of her estate otherwise than as agreed by her. The defendants named in the bill are the executors under the will and Martin Winkler.
A parol agreement to make a particular disposition of one's property when supported by a valid consideration, is enforceable in equity. Johnson v. Hubbell, 10 N.J. Eq. 332; DiGirolamo v.DiMatteo, 108 N.J. Eq. 592; Hendershot v. Hendershot, 135 N.J. Eq. 232; Poloha v. Ruman, 137 N.J. Eq. 167.
Such an alleged agreement is to be subjected to close scrutiny and will be enforced only when the evidence to support it is clear and convincing. Ehling v. Diebert, 128 N.J. Eq. 115;affirmed, 129 N.J. Eq. 11; Taylor v. Langenbacker, 130 N.J. Eq. 59; Hendershot v. Hendershot, supra.
Such an agreement for the benefit of a third party may be enforced by such third party. Van Dyne v. Vreeland, 11 N.J. Eq. 370; Kamens v. Anderson, 99 N.J. Eq. 490; DiGirolamo v.DiMatteo, supra; Hendershot v. Hendershot, supra.
The evidence shows that in or about 1922 Hufnagel married Augusta Winkler, a widow, who was the daughter of Augusta Schoelling and who then had a son Martin Winkler by her former marriage, and that Augusta Schoelling and Martin Winkler then came to live with Hufnagel and his wife at 6325 Hudson Boulevard, North Bergen, a property owned by Hufnagel. A daughter Shirley (the complainant) was born August 31st, 1924, of Augusta's marriage to Hufnagel, and Augusta Schoelling and her grandson Martin continued to live with Hufnagel and his wife and their daughter Shirley, all as one family until Augusta Hufnagel died July 9th, 1927. Hufnagel's deposition taken a week prior to his death shows that upon the death of his wife Augusta he purchased crypts in a mausoleum for the purpose of interment of his wife's body and his own after his death; that at or about that time *Page 18 
Augusta Schoelling expressed to him her wish that the body of her husband be removed from a cemetery plot in which it had been buried and be interred in a crypt in the same mausoleum in which her daughter Augusta was buried and that another crypt be reserved for her on her death and that she be permitted to make her home with Hufnagel. His deposition further shows that he then agreed to her wishes upon her promise made at his request that she would bequeath her estate on her death to her grandson Martin and her granddaughter Shirley equally and that she assented to that arrangement; that he then surrendered the crypts he had purchased and acquired in their stead October 10th, 1927, a section containing five crypts in said mausoleum at a cost of $8,250, placed his wife's body in one of those crypts, removed the body of Augusta Schoelling's husband from the cemetery plot in which it had been buried and placed it in another of said crypts and reserved a third crypt for the body of Augusta Schoelling on her death. When she died June 18th, 1945, he interred her body in that reserved crypt.
After the death of Hufnagel's wife Augusta the domestic life of Augusta Schoelling, Martin Winkler, Shirley Hufnagel and William Hufnagel remained as before; they all continued to live together at the North Bergen address until Hufnagel married Emily Haas December 4th, 1929, when with his new wife they all moved to a home in Leonia provided by Hufnagel, no expense of the maintenance of the homes being borne by Augusta Schoelling. That arrangement continued but a few months because Augusta Schoelling expressed her desire to return to her old home in North Bergen to which request Hufnagel acceded and she and her grandson Martin returned to that home in February, 1930, where Hufnagel permitted her to reside rent free and supplied her with heat, gas and electricity until Martin married January 12th, 1940, at which time at Martin's and her desire she went to live with Martin elsewhere until her death.
Hufnagel's testimony as to the agreement with Augusta Schoelling was corroborated by the testimony of his wife Emily that Hufnagel told her about Augusta Schoelling's agreement with him to leave her estate to her two grandchildren *Page 19 
equally, and that while they were all living in Leonia and Augusta Schoelling expressed her desire to remove from that place to her old home in North Bergen, Augusta Schoelling asked Hufnagel if he would provide for her and he said he would but that she would have to live up to her agreement to leave her estate to her grandchildren equally, to which she replied that she intended to and that everything was equally fixed. His testimony is further corroborated by the testimony of Barbara Smith and Margaret Protin, relatives of Augusta Schoelling, who were called as witnesses on behalf of the defendants, that shortly after the death of Augusta, Hufnagel's wife, Augusta Schoelling told them Hufnagel had requested her (Augusta Schoelling) to make a will and that she had replied she had made one. Further corroboration is the production in evidence of a will executed by Augusta Schoelling under date of February 16th, 1928, and found among her effects, whereby she gave her estate to her two grandchildren equally and appointed Hufnagel executor and their guardian. Further corroboration is the testimony of said Barbara Smith that Augusta Schoelling told her Hufnagel had been after her to take her husband out of the cemetery plot and put him in the mausoleum and leave an empty space therein for her and that the witness told her she (Augusta) should have something in writing from Hufnagel; that Augusta told her that she had asked for and received such a writing. Also found among Augusta Schoelling's effects and produced in evidence was an agreement dated October 11th, 1927, signed by Hufnagel certifying that it was understood and agreed that a certain crypt in the mausoleum section owned by Hufnagel is to be used for the sole purpose of interment of Augusta Schoelling.
After Augusta Schoelling died and had been interred in the crypt a will executed by her under date of March 16th, 1931, was admitted to probate wherein and whereby she expressly revoked all former wills, made a bequest of $200 to complainant and left the balance of her estate to Martin Winkler.
I conclude that the evidence is sufficient to support the making of the agreement alleged in the bill of complaint and to show that William Hufnagel fully performed his part *Page 20 
thereof and that performance on the part of Augusta Schoelling should be decreed by directing the executors under her will to pay to complainant one-half of the decedent's net estate.