**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0890-18T2

IN THE MATTER OF THE
INTESTATE ESTATE OF
RICHARD C. FEINSTEIN,
        Deceased.

_____

Argued November 12, 2019 – Decided December 26, 2019

Before Judges Ostrer, Vernoia and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. P-261461.

Joel N. Kreizman argued the cause for appellant David Fried (Scarinci & Hollenbeck LLC, attorneys; Joel N. Kreizman, of counsel and on briefs; Kevin M. Foltmer, on briefs).

Craig S. Provorny argued the cause for respondent Paul Feinstein (Herold Law PA, attorneys; Craig S. Provorny, of counsel; Brian S. Baum, on the brief).

PER CURIAM

David Fried, the stepson of intestate decedent Richard C. Feinstein (decedent), appeals from an order rejecting his claim that he was equitably

adopted by decedent and thereby entitled to inherit decedent's estate. Based on our review of the record, we are satisfied Fried failed to allege facts or present evidence establishing an equitable adoption. We therefore affirm the court's order finding Fried was not equitably adopted by decedent and determining decedent's brother, Paul Feinstein (Paul),[1] is the sole beneficiary of decedent's estate.[2]

I.

This action commenced with Fried's filing of a caveat with the Middlesex County Surrogate Court, objecting to the grant of any letters of administration and the probate of any purported will of decedent, who died on May 27, 2018. Paul later filed a caveat interposing the same objections.

Paul filed a verified complaint requesting appointment as the administrator of decedent's estate and an order directing that Fried provide an accounting and turn over of decedent's property. The complaint asserted that Paul is decedent's brother; decedent died intestate; and decedent died without a

---

[1] Because decedent Richard C. Feinstein and his brother Paul Feinstein share the same surname, for purposes of clarity we refer to Richard as "decedent" and Paul Feinstein as "Paul." We intend no disrespect in doing so.

[2] The court's order included other determinations that are not challenged on appeal. We affirm the court's order on those determinations as well.

A-0890-18T2

spouse, domestic partner, or any children. Paul asserted that decedent's estate therefore passed to him pursuant to N.J.S.A. 3B:5-4. The court entered an order that in pertinent part required that Fried show cause why an order should not be entered appointing Paul the administrator of the estate, requiring that Fried provide an accounting, and granting such other relief the court finds just and reasonable.

Fried filed an answer and counterclaim asserting his mother married decedent in 1981 when Fried was three years old, and "[t]hereafter, in all respects, [decedent] became [Fried's] father and [Fried] became [decedent's] son." Fried asserted that "[t]he only reason [decedent] did not legally adopt [Fried] was that [Fried's] birth father refused to acquiesce." Fried also presented a certification from decedent's cousin, Elaine Giarrusso, stating that decedent "let [her] [k]now that one day [decedent] expected his Porsche, among other things, would be" Fried's. Fried claimed he was entitled to inherit decedent's estate because decedent equitably adopted him. Fried also alleged he acted solely for the estate's benefit following decedent's death, Paul offered and provided no assistance with the administration of the estate, and Fried should be named the estate's administrator.

A-0890-18T2

Fried further submitted a certification asserting that, following his mother's and decedent's 1981 marriage, decedent "was the only father [he] knew." Fried averred that he "barely know[s] his birth father[,]" but that he "was advised that when [decedent] sought to adopt [him], [his] birth father refused to acquiesce and therefore the adoption never went through." He also asserted decedent's and Paul's relationship "was very limited," Paul "live[d] on Long Island, [and] never came to visit" decedent, and he did not believe Paul and decedent spoke "more than once or twice a year." Fried also detailed the actions he took on the estate's behalf following decedent's death and claimed Paul "never objected and . . . never offered to take over or participate."

Paul submitted a certification disputing Fried's claim that he was not close with decedent. Paul explained that since 2000, he and decedent suffered from serious medical issues, and he underwent many medical procedures, including amputations, a kidney transplant, and numerous cancer surgeries, and that, as a result, he and decedent "agreed to speak to each other by telephone rather than undergo the rigors of travel." Paul asserted that, nonetheless, during their telephone conversations he and decedent "were each other's support system, giving each other advice, encouragement and love through [their] various major

A-0890-18T2

illnesses." Paul stated that decedent never "mention[ed] anything about his step-son" Fried during their telephone conversations.

According to Paul, he made decedent's funeral arrangements, and Fried told him that he could not gain access to decedent's apartment because the police declared it to be a crime scene. Paul also asserted that Fried failed to inform him about the disposition of decedent's assets and refused to provide him with decedent's death certificate and information about decedent's bank accounts. Paul averred that Fried "made a conscious decision not to inform" him about Fried's actions concerning decedent's estate.

The court heard argument on the return date of the order to show cause. Fried argued he was equitably adopted by decedent based on an implied agreement by decedent to adopt him. The court rejected Fried's claim, reasoning that equitable adoption has been found only in cases where there was evidence of an intention to adopt, but Fried failed to present such evidence. The court determined Fried did not present any evidence that decedent agreed to adopt him. The court also rejected Fried's waiver, estoppel, and unclean hands defenses.

The court entered an order appointing Paul administrator of the estate and declaring him the sole heir of decedent's estate pursuant to N.J.S.A. 3B:5-4(c);

5

discharging Fried's caveat; declaring Fried was decedent's stepson and was not equitably adopted; instructing Fried to turn over all estate property in his possession to Paul within ten days—with the exception of the decedent's Mercedes and Porsche, for which the order was stayed pending appeal; instructing Fried to submit a list of expenses he incurred on behalf of the estate for which he would be reimbursed; and dismissing Fried's counterclaim in its entirety with prejudice. This appeal followed.

II.

"Regulating succession or [intestate] inheritance is a legislative province." In re Estate of Sapery, 28 N.J. 599, 605 (1959). "The Legislature has plenary power over the devolution of title and the distribution of [an] intestate's property." Cassano v. Durham, 180 N.J. Super. 620, 622 (Law Div. 1981). N.J.S.A. 3B:5-4(c) provides that the estate of an intestate decedent, such as decedent here, who does not have a surviving spouse, domestic partner, descendants, or surviving parents, passes to the "descendants of the decedent's parents." The sole descendant of decedent's parents is decedent's brother Paul. Thus, under N.J.S.A. 3B:5-4, Paul is the sole heir to decedent's estate.

In support of his claim that he is the sole heir to the estate, Fried seeks refuge in the assertion he was equitably adopted by decedent, is decedent's

6

descendant under N.J.S.A. 3B:5-4(a), and is entitled to inherit the estate over Paul.[3] Fried contends the court erred by applying the wrong legal standard in concluding that he was not equitably adopted and not entitled to inherit decedent's estate. We exercise plenary review of the court's decision because "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"New Jersey recognizes the doctrine of equitable adoption as a theory of inheritance under intestacy." In re W.R. ex rel. S.W., 412 N.J. Super. 275, 279 n.2 (Law Div. 2009) (citing Burdick v. Grimshaw, 113 N.J. Eq. 591, 596 (Ch. Div. 1933)). An equitable adoption has been defined as follows:

> [E]quitable adoption is a judicial construct used to uphold claims by a child not formally adopted to benefit[] from his or her "adoptive parents" in the same

---

[3] Under N.J.S.A. 3B:5-4(a), a decedent's descendant inherits the estate if the decedent dies without a spouse or domestic partner. N.J.S.A. 3B:1-1 defines "descendant" of a decedent as "all of his [or her] progeny of all generations, with the relationship of parent and child at each generation being determined by the definition of "child" contained in [N.J.S.A. 3B:1-1] and "parent" contained in N.J.S.A. 3B:1-2." A child is "any individual, including a natural or adopted child . . . and excludes any individual who is only a step child." N.J.S.A. 3B:1-1. A parent is "any person entitled to take or who would be entitled to take if the child, natural or adopted, died without a will . . . and excludes . . . a stepparent." N.J.S.A. 3B:1-2. Fried claims that because he was equitably adopted, he qualifies as a child and is decedent's descendant under N.J.S.A. 3B:5-4(a).

7

manner as the parent's natural or legally adopted children. The doctrine provides a remedy for a child <u>in a promised but unfulfilled adoption by granting specific performance of an express or implied contract to adopt</u>, and by estopping any challenge to the validity of the claimed adoption. It is used to ensure fundamental fairness to a child who would otherwise suffer an injustice.

[<u>In re Trust Under Agreement of Vander Poel</u>, 396 N.J. Super. 218, 232 (App. Div. 2007) (emphasis added).]

"Typically, the principle of equitable adoption is applied to benefit the foster child rather than the adoptive parent, and mainly in the context of allowing the child to inherit from a deceased parent's estate." <u>In re Adoption of Baby T</u>, 311 N.J. Super. 408, 415 (App. Div. 1998), <u>rev'd on other grounds</u>, 160 N.J. 332 (1999).

To establish an equitable adoption, there is a "critical need for an <u>agreement</u> to adopt." <u>In re Estate of Castellano</u>, 456 N.J. Super. 510, 517 (App. Div. 2018) (emphasis added), <u>certif. denied</u>, 237 N.J. 186 (2019); <u>see also</u> <u>In re Adoption of a Child by N.E.Y.</u>, 267 N.J. Super. 88, 97 (Ch. Div. 1993) (explaining "[e]quitable adoption is established when it is shown that the decedent agreed to adopt the child, the natural parent acted in reliance, and the child was treated as a child of the decedent, but there was no legal adoption" (quoting <u>Kupec v. Cooper</u>, 593 So. 2d 1176, 1177 (Fla. Dist. Ct. App. 1987))).

In Burdick, the court found that an unfulfilled oral agreement to adopt could support a finding of an equitable adoption, 113 N.J. Eq. at 595, because "[t]he implied agreement, arising from an agreement to adopt, not legally consummated, when the child has fulfilled its part thereof, is that the child should receive a child's share of the estate of which his foster-parent dies possessed and undisposed of by will or otherwise," id. at 596. Similarly, in Hendershot v. Hendershot, the court found an equitable adoption where the testator had entered into a binding oral agreement supported by consideration to adopt his stepson and to make a will bequeathing and devising a share of his estate to his stepson. 135 N.J. Eq. 232, 237 (Ch. Div. 1944). The court noted that the putative beneficiary of an estate is entitled to "enforce specific performance of . . . an agreement" to "devise or bequeath by will." Ibid.; see also Ashman v. Madigan, 40 N.J. Super. 147, 149-50 (Ch. Div. 1956) (finding that statements and conduct of the decedent demonstrated the existence of an enforceable agreement to adopt).

A finding of an equitable adoption "should . . . always require that the adoption agreement be first established by proof of the type and character required in such cases, with respect to the production and sufficiency of which it should be rigid and exacting." Burdick, 113 N.J. Eq. at 597. Although there

is no requirement that there be direct evidence of an agreement to adopt, "the statements and conduct of the adopting parents [should be] such as to furnish clear and satisfactory proof that an agreement of adoption must have existed." Ashman, 40 N.J. Super. at 150. Because parol agreements "are easily fabricated and most difficult to disprove," and provide opportunities for "the perpetration of fraud and the wrongful diversion of a decedent's property," they are viewed "with grave suspicion," are subject to "close scrutiny," and shall "stand only when established by evidence that is clear, cogent[,] and convincing, leaving no doubt with respect to their actual making and existence." Burdick, 113 N.J. Eq. at 598; accord Hendershot, 135 N.J. Eq. at 237.

Fried argued he was equitably adopted by decedent based on an alleged implied agreement to adopt. He therefore had the burden of either alleging facts or providing evidence that decedent impliedly agreed to adopt him. Burdick, 113 N.J. Eq. at 597. There is no direct evidence of an agreement to adopt Fried.

Fried alleged and presented evidence showing only that following his mother's marriage to decedent in 1981, decedent was his stepfather, decedent treated him as a son for the thirty-seven years prior to decedent's death, and he viewed decedent as his father. He also represented that he was "advised" decedent expressed an interest in adopting him when he was a child, but his birth

father objected and decedent never took any further action to adopt him, even during the twenty-years that passed after Fried attained his majority in 1998. He further presented Giarrusso's certification in which she stated only that decedent "let [her] know" he expected that "one day" his Porsche "among other things" would be Fried's.

Missing from Fried's allegations and supporting certification is any evidence suggesting decedent impliedly agreed to adopt him. Giarrusso's statement is unrelated to any agreement to adopt. And even accepting all of Fried's assertions and supporting evidence as true, the record is bereft of any facts supporting an implied agreement by decedent to adopt him. Fried's claim he was advised decedent expressed interest in adopting him when he was a child but did not do so bespeaks only one logical conclusion; decedent decided not to adopt Fried because Fried's birth father objected. The record is devoid of any facts or evidence that decedent changed his mind and, more importantly, provides no basis for a finding that decedent ever agreed, impliedly or otherwise, to adopt Fried.

Fried contends his situation is like that presented by the plaintiff in Ashman, but the comparison is misplaced.[4] In Ashman, the putative adopted daughter believed she was the natural daughter of the decedent. 40 N.J. Super. at 148. Although she could not produce a birth certificate, she presented a baptismal certificate listing the purported adoptive parent as her birth parent. Ibid. In addition, "[a] number of witnesses testified concerning [admissible] declarations" by the deceased mother "in which she referred to the plaintiff as her daughter." Ibid. The evidence further showed the plaintiff and the decedent had "a normal relation of mother and daughter extending over a period of upwards of [fifty] years." Id. at 149.

In contrast, Fried knew himself to be decedent's stepson and had no reason to believe decedent was his birth father or that he had ever been adopted. Fried

_____

[4] The other equitable adoption cases Fried cites required direct evidence of specific agreements to adopt. See D'Accardi v. Chater, 96 F.3d 97 (4th Cir. 1996) (finding equitable adoption because the decedent agreed to adopt and began adoption proceedings, even though he changed his mind and decided to discontinue adoption proceedings prior to his death); Hendershot, 135 N.J. Eq. at 232 (finding equitable adoption of stepson based on an oral agreement between the decedent and the stepson's mother). Fried also relies on In re Adoption of Baby T, 160 N.J. 332, 342 (1999), but the Court "decline[d] to address the issues related to . . . the applicability of equitable adoptions" in that matter.

had a thirty-seven-year relationship with decedent as a stepson and, as noted, produced no evidence decedent impliedly or otherwise agreed to adopt him. Fried has not presented any evidence of "statements and conduct of the [decedent]" sufficient "to furnish clear and satisfactory proof that an agreement of adoption must have existed," that was found extant in <u>Ashman</u>.[5]  <u>Id.</u> at 150.

In sum, the limited facts presented in support of Fried's claim are insufficient to support a finding that an "agreement to adopt" existed.  <u>See</u> <u>Burdick</u>, 113 N.J. Eq. at 595.  Lacking evidence of such an agreement, the court correctly determined that Fried failed to demonstrate he was equitably adopted and therefore the sole beneficiary of decedent's estate.  <u>See</u> <u>id.</u> at 599 (declining to find an equitable adoption because the stepson did not present "direct cogent evidence" that the decedent specifically agreed to adopt him).

---

[5] We are also not persuaded by Fried's reliance on <u>In re Estate of Ford</u>, 200 A.3d 1207 (D.C. Appeals 2019).  Fried relied on the decision in a letter brief filed with this court's permission following oral argument.  Fried relies on the decision in support of an argument that was not raised before the trial court— that he should be deemed equitably adopted based solely on equitable considerations and fairness and without regard to whether he can establish an implied agreement to adopt.  We do not consider the merits of the argument because it does not go to the court's jurisdiction or involve a matter of public concern.  <u>Zaman v. Felton</u>, 219 N.J. 199, 226-27 (2014).  We note, however, that the court in <u>Ford</u> expressly rejected the legal theory upon which Fried's claim was presented to the trial court—he is entitled to an equitable adoption based on specific performance of an implied contract to adopt.  That is the singular legal theory supporting equitable adoption in New Jersey.

A-0890-18T2

We find no merit in Fried's claim that Paul is estopped from, waived his right to, or under the doctrine of unclean hands is barred from, serving as the estate's administrator or from inheriting the estate. The parties dispute their respective roles in addressing the administration of decedent's estate and property, but resolution of the disputes would have no effect on the outcome here. Paul is the estate's sole heir and the court determined that any costs incurred by Fried in the administration of the estate prior to Paul's appointment as administrator shall be paid from the estate. The court's determinations are supported by the record presented, and, even accepting as true Fried's allegations concerning Paul and the initial handling of decedent's assets and estate, we find no basis to reverse the court's order.

Fried also argues the court erred by granting Paul's requested relief because there are disputed material facts upon which Paul's claims are premised. Fried claims he "demonstrated good cause [because] the fundamental premises on which [Paul's] requests for relief are based are materially disputed." Fried also claims it is "not clear" that Paul is a remaining heir of the intestate estate under N.J.S.A. 3B:10-2. Fried also voices "serious concerns with the appointment of [Paul] as a capable administrator."

Fried's equitable adoption argument presents legal issues, not genuine issues of fact, that have been decided on the record presented. Again, even if Fried's allegations and evidence presented to the court are accepted as true, he did not sustain his burden of alleging or demonstrating sufficient facts establishing the agreement to adopt essential to his equitable adoption claim. The other undisputed evidence established that Paul is decedent's brother and sole heir, and therefore is entitled to inherit the estate, N.J.S.A. 3B:5-2, and be appointed as administrator, N.J.S.A. 3B:10-2. Fried's vague "concerns" about Paul's ability to serve as administrator do not raise a fact issue requiring a plenary hearing.

We do not address the merits of Fried's claim, raised for the first time on appeal, that the court erred by summarily granting Paul's application. Fried contends he lacked notice that the court would summarily decide the equitable adoption issue on the return of the order to show cause. The issue does not go to the court's jurisdiction or involve matters of public concern. Zaman, 219 N.J. at 226-27. Moreover, the court is authorized to proceed summarily on a probate complaint, R. 4:83-1, and where "no objection is made by any party . . . or the affidavits show palpably that there is no genuine issue as to any material fact, the court may try the action on the pleadings and affidavits, and render final

A-0890-18T2

judgment thereon," <u>R.</u> 4:67-5.  Fried never objected to the court addressing the equitable adoption issue or summarily deciding it during the hearing.

Any arguments we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0890-18T2